Ed TAYLOR, Appellant,

v.

STATE of Missouri, et
al., Respondents.

No. SC 88559.

Supreme Court of Missouri,
En Banc.

March 18, 2008.

Denise D. Lieberman, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul C. Wilson, Asst. Atty. Gen., Alana M. Barragan-Scott, Asst. Atty. Gen., Jefferson City, Timothy Inman, Ste. Genevieve County Prosecuting Atty., Ste. Genevieve, MO, for Respondents.

MICHAEL A. WOLFF, Judge.

## Introduction

Ed Taylor, a resident of Ste. Genevieve County, filed suit against the State of Missouri challenging the constitutionality of the state's "Concealed–Carry Act," which authorizes the issuance of permits for per-

sons to carry concealed firearms. Specifically, Taylor claimed that the statute violates article X, section 16 through 22 of the state constitution, known as the "Hancock Amendment," and that concealed weapons permits issued under the law should be invalidated. The trial court entered summary judgment for the state and Taylor appealed. Because the constitutionality of a state statute is at issue, this Court has jurisdiction to hear the appeal. Mo. Const. art. V, section 3.

## Missouri's Concealed Carry Act

The General Assembly in 2003 enacted, over the governor's veto, sections 50.535, 571.030 and 571.094 which set forth requirements for obtaining a permit to acquire a concealable firearm. Section 571.094 provided that a person seeking such a permit must submit an application to the sheriff in the county where the applicant resides. *Id.* If the applicant met the qualifications for a concealed firearm permit set forth under the statute, section 571.094 directed the sheriff to issue a permit. Section 571.094.5, RSMo Supp. 2004.

The statute, in its original form, authorized counties to charge a fee for such permits. *Id.* at subsection 7. Section 50.535(2) provided that the fee "shall be deposited by the county treasurer into a separate interest-bearing fund to be known as the County Sheriff's Revolving Fund." Section 50.535, RSMo Supp.2004, authorized county sheriffs to use funds from the sheriff's revolving fund to purchase equipment and provide training.

### Brooks v. State

This Court addressed the constitutionality of sections 571.094 and 50.535, RSMo Supp.2004, in *Brooks v. State*, 128 S.W.3d 844 (Mo. banc 2004). In *Brooks*, a group of taxpayers alleged that the Concealed–Carry Act violates the constitution and

that the funding scheme of section 571.094 violated the Hancock Amendment. *Id.* at 846. The Hancock Amendment prohibits the state from "requiring any new or expanded activities by counties and other political subdivisions without full state financing, or from shifting the tax burdens to counties and other political subdivisions." Mo. Const. art. X, section 16. The plaintiffs in *Brooks* argued that section 571.094 violated this Hancock Amendment prohibition against "unfunded mandates" by requiring expanded activities of the county sheriff without providing full state financing. *Id.* at 848.

The Court in *Brooks* upheld the constitutionality of the Concealed–Carry Act, but concluded that the funding provisions did not comply with the Hancock Amendment. In evaluating the constitutionality of section 571.094 under the Hancock Amendment, the Court considered whether the requisite processing fee was sufficient to cover the expenses of processing the application. *Id.* at 850. The Court noted that section 571.094.10 instructed county sheriffs to deposit the processing fees into the sheriff's revolving fund. *Id.* at 848. Once the processing fees were deposited in the revolving fund, section 50.535, RSMo Supp.2004, mandated that the sheriff could only use the revolving fund principal "for the purchase of equipment and to provide training." Since there are expenses involved in the permit processing beyond the purchase of equipment and training, however, section 571.094 required "expanded activities" without full state financing. *Id.* at 850. Because these statutes contained unfunded mandates, the Court held that sections 571.094 and 50.535, RSMo Supp.2004, violated the Hancock Amendment. *Id.*

The plaintiffs in *Brooks* presented evidence that the permit fee was not sufficient to cover the costs of complying with

the law in Camden, Cape Girardeau, Greene and Jackson counties. *Id.* at 851. After determining that section 571.094 and 50.535, RSMo Supp.2004, contained an unfunded mandate, the Court in *Brooks* entered judgment enjoining the state from enforcing section 571.094 in these four counties. *Id.*

### Section 50.535, RSMo Supp.2006

After the court in *Brooks* declared the Concealed–Carry Act's funding mechanism unconstitutional, the legislature in 2005 enacted section 50.535, RSMo Supp.2006. Section 50.535 (Supp.2006) provides that "the sheriff of every county, regardless of classification, is authorized to pay, from the sheriff's revolving fund, all reasonable and necessary costs and expenses for activities or services occasioned by compliance with sections 571.101 to 571.121." *Id.* Under the revised statute, these costs include, but are not limited to "the purchase of equipment, training, fingerprinting and background checks, employment of additional personnel, and any expenditure necessitated by an action under section 571.114 or 571.117." *Id.* By providing for payment of "all reasonable and necessary costs" of processing the permit applications, the revised funding mechanism under section 50.535, RSMo Supp.2006, addressed the Hancock violation identified in *Brooks*.[1]

### Taylor's Claims

■ Taylor argues that, because the Court in *Brooks* declared the funding scheme of sections 571.094 and 50.535,

RSMo Supp.2004, unconstitutional, the concealed-carry permits issued under this section should be declared "null and void."

Before analyzing his claim, it is important to note that Taylor draws his standing exclusively from the Hancock Amendment, since he does not allege that he, himself, was assessed an unlawful fee or tax. Mo. Const. art X, sec. 23, part of the Hancock Amendment, provides that "any taxpayer of the state, county or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri supreme court, to enforce the provisions of sections 16 through 22, inclusive of this article."

■ Taylor is confined, therefore, to the relief offered by the Hancock Amendment. The heading of article X, section 23 of the Missouri Constitution describes the nature of the remedy for a Hancock Amendment violation. It reads "Taxpayers may bring actions for interpretations of limitations." *Id.* An interpretive remedy, in this context, allows the court to interpret a particular statute in light of constitutional limitations. In other words, section 23 authorizes declaratory relief but does not mention other forms of relief, such as injunction or damages. *See Fort Zumwalt School Dist. v. State,* 896 S.W.2d 918, 923 (Mo. banc 1995). The court may, under article X, section 23, declare a statute constitutional or unconstitutional. The limited nature of the declaratory, or interpretive, remedy does not authorize a court to enter a judgment for damages or injunctive relief.[2]

---

1. Section 50.535, RSMo Supp.2006, also provides that "the maximum fee permitted by section 571.101, RSMo, is inadequate to cover the actual reasonable and necessary expenses in a given year, and there are not sufficient accumulated unexpended funds in the revolving fund, a sheriff may present specific and verified evidence of the unreimbursed ex-

penses to the office of administration, which upon certification by the attorney general, shall reimburse such sheriff for those expenses from an appropriation made for that purpose." *Id.*

2. Missouri's Declaratory Judgment Act, section 527.010, outlines the nature of the declaratory remedy. It states, The circuit courts

Inherent in the courts' power to enter a declaratory judgment, however, is the power of the court to enforce the judgment through other forms of relief where a party acts contrary to a court's declaratory judgment. As such, had the court previously entered a declaratory judgment on a statewide basis, as it did in *Brooks,* and the state refused to comply, the court could then enter an injunction to enforce the declaratory judgment. Where, as here, there is no allegation that the state has refused to comply with this Court's decision in *Brooks,* there is no need for the Court to take further action than the declaration of the law made in *Brooks.*

*Brooks* declared the funding mechanism of section 571.094 unconstitutional, a decision that constituted an interpretation of limitations under article X, section 23 of the Missouri Constitution. This is the relief Taylor seeks in this lawsuit, and it already has been rendered in *Brooks.* There is no question as to a damages remedy, and no county aggrieved by an unfunded mandate is a plaintiff here.

Taylor, who does not assert standing to seek damages for himself, asks this Court to declare any permits issued by Ste. Genevieve County prior to the *Brooks* decision null and void in order to remedy the alleged unfunded mandate. Such relief would not be appropriate because it would not remedy an unfunded mandate. The only remedy for an unfunded mandate is to declare the mandate unconstitutional or to declare that the state must provide full funding. Voiding the permits does not in any way restore to the county and its

taxpayers the money that was expended in issuing the permits.

### Conclusion

Because this Court has already issued an interpretation of limitations under article X, section 23, Taylor's prayer for declaratory relief is seeking relief that already has been granted. Taylor's request that the Court invalidate the permits issued under the pre-*Brooks* version of the statute would not remedy an unfunded mandate. Because article X, section 23 allows for payment of plaintiff's costs only where his suit is sustained, Taylor's prayer for attorneys fees and costs is denied.

The judgment is affirmed.

All concur.

---

of this state, within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. *Id.*