

# SUPREME COURT OF MISSOURI
## en banc

DARRELL COPE and the )  *Opinion issued April 16, 2019*
MISSOURI DEMOCRATIC PARTY, )
       )
         Appellants, )
       )
v. )  No.  SC97284
       )
MICHAEL L. PARSON and MIKE )
KEHOE, )
       )
         Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### The Honorable Jon E. Beetem, Judge

Darrell Cope and the Missouri Democratic Party ("MDP") appeal the circuit court's dismissal of a petition seeking a declaratory judgment that Governor Michael L. Parson's appointment of Mike Kehoe to the office of Lieutenant Governor was unauthorized, per § 105.030.[1]  The circuit court concluded Cope and the MDP had no standing to bring this action, private citizens lack the authority to seek the removal of a public official through litigation and that the Governor of Missouri has the authority to appoint a Lieutenant Governor in the event of a vacancy.  The circuit court's judgment is affirmed in part and reversed in part.

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

**Factual and Procedural History[2]**

Michael L. Parson previously served as Missouri's Lieutenant Governor, an office

he held until the resignation of Governor Eric Greitens. Governor Parson then succeeded

Greitens to the office of Governor, leaving the office of Lieutenant Governor vacant.

Governor Parson appointed Mike Kehoe to be the Lieutenant Governor. The day of

---

[2] In the statement of facts in Governor Parson and Kehoe's brief submitted to this Court they included pages of material from outside the record on appeal, including quotes from:

1. Former Governor Christopher S. Bond: "The people of Missouri deserve a full slate of constitutional officials serving them and the governor needs a lieutenant governor. I applaud Governor Parson for demonstrating leadership by filling this vacancy in a thoughtful and deliberate manner."
2. Former Governor Jay Nixon: "Missourians are best served by having a Lt. Governor in office. … As Attorney General and later Governor, I researched this issue extensively and firmly believe the Governor has the authority to fill a vacancy in this office by appointment."
3. Former Governor Bob Holden: "The Legislature has not provided any alternative to the Governor making the appointment to fill the Lt. Governor's position when vacant, and past practices based on legal counsel from prior Governors … is that the Governor shall make an appointment to fill the Lt. Governor's position."
4. Former Governor Matt Blunt: "Governor Parson has made another great decision in appointing Mike Kehoe as the next Lieutenant Governor. … I believe our constitution empowers the governor to fill this and other vacancies. Given the many assigned responsibilities of the Lieutenant Governor it is clear to me that the intent was and is that Missouri should have a leader in that role."

The statement of facts also includes news articles citing the knowledge of Joe Bednar, former chief counsel for Governors Carnahan and Wilson, and Lowell Pearson, former chief counsel for Governor Blunt that "[t]he governor has the constitutional authority, and mandate, to fill the vacancy." Cope and the MDP have filed a motion to strike the statement of facts. This Court sustains the motion to strike those portions, including the above, of the statement of facts outside the record on appeal.

"The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. All statement of facts shall have specific page references to the relevant portion of the record on appeal." Rule 84.04(c). Though former Governors and chief counselors might provide some political support for a sitting Governor's decision to exercise his authority to appoint a Lieutenant Governor, their opinions have no relevance or influence on this Court. Further, the facts stated in the facts section of an appellate brief submitted to this Court should be limited to the record on appeal. *Id.*

Kehoe's appointment, Cope and the MDP filed a petition seeking injunctive and declaratory relief against Governor Parson and Kehoe in the circuit court of Cole County. The petition alleged Governor Parson lacked legal authority, per § 105.030, to appoint a Lieutenant Governor and that the office must remain vacant until the next general election in 2020.

Governor Parson and Kehoe filed a motion to dismiss the petition claiming a private litigant does not have the authority to remove the Lieutenant Governor from office, that Cope and the MDP lacked standing to assert their claims, and that the Governor has the authority to appoint a Lieutenant Governor under article IV, § 4 of the Missouri Constitution. The circuit court held a hearing on Governor Parson and Kehoe's motion to dismiss. During the hearing, Cope and the MDP withdrew their request for injunctive relief, leaving only a request for declaratory relief regarding the validity of Governor Parson's appointment of Kehoe.

The circuit court sustained the State's motion to dismiss, concluding Cope and the MDP did not have associational or taxpayer standing to challenge Governor Parson's appointment of Kehoe. Cope and the MDP filed a direct appeal to this Court.[3]

**Standard of Review**

"This Court reviews the trial court's grant of a motion to dismiss *de novo*." *Mo. Municipal League v. State*, 489 S.W.3d 765, 767 (Mo. banc 2016). If the dismissal is

---

[3]   Cope and the MDP are challenging the appointment of Kehoe to the office of Lieutenant Governor by Governor Parson. This Court has exclusive appellate jurisdiction of cases "involving … the title to any state office." Mo. Const. art. V, § 3. "Title" is defined as "an assertion of right; claim." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2400 (3d. ed. 1976). "State office" is an office in which the duties and functions are "coextensive with the boundaries of the state." *State v. Olvera*, 969 S.W.2d 715, 716 (Mo. banc 1998).

justified on any ground included in the motion to dismiss, the circuit court's judgment will be affirmed. *Reed v. Reilly Co., LLC*, 534 S.W.3d 809, 811 (Mo. banc 2017). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.*

**Analysis**

The issues of this case boil down to whether petitioners have standing to bring this declaratory judgment action and, if so, whether the Governor has the authority to appoint a Lieutenant Governor. Last at issue is whether this Court should even entertain the questions presented, as the State contends any opinion rendered in this case would be advisory in nature.

Standing

"Standing is a question of law, which is reviewed de novo." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). For a declaratory judgment action, the petitioner must "have a legally protectable interest at stake in the outcome of the litigation." *State ex rel. Kan. City Power & Light Co. v. McBeth*, 322 S.W.3d 525, 531 (Mo. banc 2010). This exists "if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011).

4

Cope alleges standing as a taxpayer of the state of Missouri. Taxpayers have a legally protectable interest in the proper use and expenditure of tax dollars. *See, e.g.*, *Lebeau*, 422 S.W.3d at 288-89; *E. Mo. Laborers Dist. Council v. St. Louis Cnty.*, 781 S.W.2d 43, 46 (Mo. banc 1989). The interest "derives from the need to ensure that government officials conform to the law." *Lebeau*, 422 S.W.3d at 288. Acting as a necessary check on government authority,

> [t]axpayer standing gives taxpayers the opportunity to challenge certain actions of government officials that the taxpayer alleges are unauthorized by law, and it permits challenges in areas where no one individual otherwise would be able to allege a violation of the law. … Taxpayers must have some mechanism of enforcing the law.

*Id.* at 289 (internal quotations omitted).

To show a legally protectable interest as a taxpayer the plaintiff must be able to demonstrate: "(1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011); *see E. Mo. Laborers Dist.*, 781 S.W.2d at 47.

Cope alleges he is a taxpayer and citizen of Wright County, Missouri. He challenges the authority of Governor Parson to appoint Kehoe to the office of Lieutenant Governor, contending such an appointment was outside the scope of the Governor's constitutional and statutory authority to fill vacancies in public offices. He alleges taxpayer standing to challenge Governor Parson's authority to appoint Kehoe as Lieutenant Governor "because such appointment will require the expenditure of revenue collected by taxpayers to fund the Office of the Lieutenant Governor." This is an allegation of a direct expenditure of

5

funds generated through taxation. In 2018, the non-appointment of a Lieutenant Governor would have saved the Missouri taxpayers, at a minimum, the salary of the Lieutenant Governor. Thus, these allegations are sufficient to give Cope standing to proceed with his declaratory judgment action as a taxpayer of the state of Missouri.

The MDP alleges it has associational standing "because Governor Parson's purported appointment of a Lieutenant Governor will create an electoral disadvantage for the Party and its members, Democratic voters in the State of Missouri." The injury alleged is that *if* Kehoe decides to run as an incumbent in the next election, it *will* result in an electoral disadvantage. However, in light of the holding that Cope has standing to proceed, the question of MDP's associational standing need not be addressed. *Mo. Coal. for Env't,* 948 S.W.2d at 132.

Governor's Authority

The Governor of Missouri's authority to appoint a Lieutenant Governor derives from article IV, § 4 of the Missouri Constitution which provides: "The governor shall fill all vacancies in public offices *unless otherwise provided by law …*" (emphasis added).

The crux of this case is resolved by interpreting what was intended by the phrase "unless otherwise provided by law," a phrase which was included in the provision at the time the Missouri Constitution was enacted.[4] Using the words' plain, ordinary meaning in

---

[4] The words "otherwise" and "provided" have held the same meaning since then. "Otherwise" is defined as "in a different manner, in another way, or in other ways." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1729 (2d ed. 1959); *see* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1598 (3d ed. 2002) (defining "otherwise" as "in a different way or manner"). To "provide" is "[t]o furnish; supply." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1994 (2d ed. 1959); *see* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1827 (3d ed. 2002) (defining "provide"

6

the context of the constitution, the Governor has the constitutional authority to fill all vacancies in public offices unless another way of filling the vacancy is furnished by law.

Cope acknowledges "Missouri law … provides no way to fill a vacancy in the office of Lieutenant Governor." However, he relies on § 105.030 to support his argument that "the General Assembly's intent that should a vacancy arise in the office of Lieutenant Governor, the office will remain vacant until the next applicable election." Section 105.030, in pertinent part, provides:

> Whenever any vacancy, caused in any manner or by any means whatsoever, occurs or exists in any state or county office originally filled by election of the people, other than in the offices of lieutenant governor, state senator or representative, sheriff, or recorder of deeds in the city of St. Louis, the vacancy shall be filled by appointment by the governor…

Cope's argument — that this statute shows an intent for the listed offices to remain vacant should a vacancy occur — ignores that the law provides a way to fill every office expressly mentioned in the statute apart from Lieutenant Governor. *See* Mo. Const. art. III, § 14 ("Writs of election to fill vacancies in either house of the general assembly shall be issued by the governor."); § 57.080 ("Whenever from any cause the office of sheriff becomes vacant, the same shall be filled by the county commission; if such vacancy happens more

---

as "to supply for use"). Unless the words used in a constitutional provision have a technical or legal meaning, or "such construction will defeat the manifest intent of the constitutional provision," this Court must give them their plain and ordinary meaning. *State v. Honeycutt*, 421 S.W.3d 410, 415 (Mo. banc 2013).

The dissent's reliance on *State ex rel. St. Joseph Lead Co. v. Jones*, 192 S.W. 980, 981 (Mo. banc 1917), to suggest what the phrase "unless otherwise provided by law" means when construing conflicting statutes, is like comparing apples to oranges. The resolution of this case requires this Court to construe what the phrase "unless otherwise provided by law" means when the Governor's power to appoint is expressly provided by the Constitution and a subsequently enacted statute does not provide how or whether a vacancy is filled.

than nine months prior to the time of holding a general election, such county commission shall immediately order a special election to fill the same[.]"); ST. LOUIS, MO. CODE, art. VIII, § 6 ("Any vacancy in any elective office … shall be filled by appointment of the mayor until a successor is elected and qualifies").

Both the dissenting opinion and Cope argue this Court should infer a preemption of the constitutional power of the Governor to appoint, however "[t]here is no need for courts to infer a preemption … where the legislature does not say so." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000). More so, this Court has held the Governor's express article IV, § 4 power to appoint cannot be abrogated by mere implication, as "[t]he uninterrupted functioning of the government has been recognized as a vital end ... construing article IV, section 4…." *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 486-87 (Mo. banc 1984). By excepting the offices of Lieutenant Governor, state senator or representative, sheriff and the St. Louis city recorder of deeds from § 105.030, the legislature merely kept those offices outside the scope of this statute.

Further, the constitution is clear, the Governor may fill *all* vacancies in public offices unless the law provides an alternative method. Mo. Const. art. IV, § 4. Cope does not dispute there is no alternative method. Therefore, article IV, § 4 controls the authority of the Governor to appoint a Lieutenant Governor, and Governor Parson was within his constitutional authority when he appointed Kehoe to the office of Lieutenant Governor.

<u>Advisory Opinion</u>

Lastly, the State argues that because Cope withdrew his request for injunctive relief, the remaining relief requested in the petition was nothing more than a thinly-veiled request

8

for an unauthorized advisory opinion. The State contends a declaratory judgment in this case would have no binding effect on Governor Parson or Kehoe, thus constituting a "quintessential advisory opinion."[5]

This Court is not authorized to issue advisory opinions. *Williams*, 626 S.W.2d at 227. "An opinion is advisory if there is no justiciable controversy, such as if the question affects the rights of persons who are not parties in the case, the issue is not essential to the determination of the case, or the decision is based on hypothetical facts." *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 324 n.3 (Mo. banc 2016). But "[n]o action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for." § 527.010.

A justiciable controversy exists if the petitioner has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination. *Mo. Health Care Ass'n v. Atty. Gen. of the State of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997). As established above, Cope has sufficiently alleged taxpayer standing and therefore has a legally protectable interest at stake in the litigation. His petition further establishes the requisite controversy between the Governor and himself as he, a taxpayer, is alleging the unconstitutional nature of the Governor's appointment of a Lieutenant Governor. Lastly, the controversy is ripe. "A ripe

---

[5] The State alleges at oral argument on the motion to dismiss Cope "conceded that Governor Parson and Lieutenant Governor Kehoe would be free to disregard any judicial opinion in their favor and remain in office, even if they were to prevail on the merits." No transcript exists of the hearing, however whether this occurred is not consequential because a party cannot concede a question of law. *State v. Douglass*, 544 S.W.3d 184, 193 n.11 (Mo. banc 2011).

controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Id*. at 621. At the time of the petition's filing, Kehoe actively occupied the office of Lieutenant Governor as a result of Governor Parson's challenged appointment.

Because this action presents a justiciable controversy, this opinion is not of an advisory nature in spite of the State's contention that a judgment would have no binding effect on Kehoe or the Governor. With statutory authority to enter a declaratory judgment comes the power "to enforce the judgment through other forms of relief where a party acts contrary to a court's declaratory judgment." *Taylor v. State*, 247 S.W.3d 546, 549 (Mo. banc 2008).

## Conclusion

This Court concludes Cope had taxpayer standing to seek a declaratory judgment to determine whether Governor Parson had authority to appoint Kehoe to be the Lieutenant Governor. Article IV, § 4 of the Missouri Constitution provides for such authority. The circuit court's judgment is affirmed in part and reversed in part.

_____
Zel M. Fischer, Chief Justice

Wilson, Russell, Powell, and Stith, JJ., concur;
Draper, J., concurs in part and dissents in part in separate opinion filed;
Breckenridge, J., concurs in opinion of Draper, J.



# SUPREME COURT OF MISSOURI
## en banc

DARRELL COPE and the )
MISSOURI DEMOCRATIC PARTY, )
)
Appellants, )
)
v. ) No. SC97284
)
MICHAEL L. PARSON and MIKE )
KEHOE, )
)
Respondents. )

**OPINION CONCURRING IN PART AND DISSENTING IN PART**

I concur in the principal opinion's holding regarding the standing of the parties in this case as well as its conclusion this is not an advisory opinion. I respectfully dissent from the principal opinion's interpretation of Missouri's constitution to permit the governor to fill the vacancy of the office of the lieutenant governor.

The Missouri Constitution states, "The governor shall fill all vacancies in public offices unless otherwise provided by law, and his [or her] appointees shall serve until their successors are duly elected or appointed and qualified." Mo. Const. art. IV, sec. 4. The legislature has "otherwise provided" by enacting section 105.030.1, RSMo Supp. 2016, which states when the governor is not authorized to fill a public office vacancy.

Section 105.030.1 provides, in relevant part:

> Whenever any vacancy, caused in any manner or by any means whatsoever, occurs or exists in any state or county office originally filled by election of the people, *other than in the office[] of lieutenant governor*, … the vacancy shall be filled by appointment by the governor ….

(Emphasis added). Section 105.030.1 prohibits the governor from making an appointment to fill the office of lieutenant governor. While the legislature provided the governor shall not make an appointment to the office of lieutenant governor, it did not provide for an alternative means to fill that office when it becomes vacant.

The principal opinion concludes the governor may make the appointment to the office of lieutenant governor because article IV, section 4 allows the governor to fill all vacancies in public office "unless the law provides an alternative method." *Slip Op*. at 8. Yet, to reach this conclusion, the principal opinion does not analyze the actual language in the constitution but, instead, grafts language into the constitution that does not exist. There is no language stating the governor shall fill public vacancies unless otherwise provided by law *and* an alternative method is provided. While the legislature may not have provided an alternative method of appointment, there is an alternative available to fill the vacancy − the position merely remains vacant until the next general election.

Words "used in constitutional provisions are interpreted to give effect to their plain, ordinary, and natural meaning." *Gray v. Taylor*, 368 S.W.3d 154, 156 (Mo. banc 2012). This Court has held for over a century that the phrase "otherwise provided by law" means unless otherwise provided by statute. *State ex rel. St. Joseph Lead Co. v. Jones*, 192 S.W. 980, 981 (Mo. banc 1917); *see also Yates v. Casteel*, 49 S.W.2d 68, 69

2

(1932), *overruled on other grounds by State ex rel. DePaul Health Ctr. v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994).

Article IV, section 4 provides the governor may not make an appointment if it is "otherwise provided by law." This language in the constitution does not limit the authority of the legislature to provide an alternative statutory means to fill a public office vacancy; it also permits the legislature to provide by statute that the governor is prohibited from filling any vacancy. Section 105.030.1 clearly states the governor may not fill a vacancy in the office of lieutenant governor. Neither the constitution nor statutes indicate, mandate, state, or require there *must* be an alternative means to fill a public office vacancy.

I would give the words in the constitution their plain and ordinary meaning. There is no inferred requirement "otherwise provided by law" means there must be a provision prohibiting the governor from filling the vacancy *and* delineating the method to fill that vacancy. The legislature has "otherwise provided by law" that the governor cannot fill the vacancy of the office of the lieutenant governor. Accordingly, because section 105.030.1 states the governor cannot fill the vacancy of the office of the lieutenant governor, I believe the governor is not authorized to appoint anyone to the office and the office should remain vacant until the next lieutenant governor is elected.

_____
GEORGE W. DRAPER III, JUDGE

3