

# SUPREME COURT OF MISSOURI
## en banc

In re TRENTON FARMS RE, LLC,⠀⠀⠀⠀)⠀⠀⠀*Opinion issued June 16, 2020*
PERMIT NO. MOGS10520; MISSOURI⠀)
DEPARTMENT OF NATURAL⠀⠀⠀⠀⠀⠀)
RESOURCES and MISSOURI CLEAN⠀⠀)
WATER COMMISSION,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondents,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No.  SC97695
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
HICKORY NEIGHBORS UNITED, INC.,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Appellant.⠀⠀⠀⠀⠀⠀⠀⠀⠀)

### PETITION FOR REVIEW OF A DECISION OF THE
### CLEAN WATER COMMISSION

Hickory Neighbors United, Inc., appeals from a clean water commission decision affirming the department of natural resource's issuance of a permit to Trenton Farms RE, LLC, to establish a swine concentrated animal feeding operation ("CAFO").  Hickory Neighbors asserts that House Bill No. 1713, which amended section 644.021.1[1] to change the criteria for members of the clean water commission, violated article III of the Missouri Constitution.  Specifically, Hickory Neighbors claims HB 1713 violated the article's original purpose requirement in section 21 and the single subject and clear title

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

requirements in section 23. Hickory Neighbors also claims Trenton Farms and the department of natural resources presented insufficient evidence that the CAFO's manure containment structures would be protected from inundation or damage in the event of a 100-year flood. Because HB 1713 does not violate the original purpose, single subject, or clear title requirements of the Missouri Constitution and Trenton Farms and the department of natural resources offered sufficient evidence regarding the CAFO's protection from a 100-year flood, the clean water commission's decision approving Trenton Farms' permit is affirmed.

## Factual and Procedural Background

In April 2015, Trenton Farms applied for a permit to establish a swine CAFO in Grundy County. After the department of natural resources issued the permit, Hickory Neighbors, a Missouri corporation formed to promote public awareness of the environmental impacts of CAFOs in Grundy County, appealed the department's decision to the administrative hearing commission.[2] The administrative hearing commission recommended the clean water commission affirm the department's decision to issue the permit. The clean water commission, however, held the department "failed to adequately determine that the swine CAFO would be protected in the event of a one hundred-year flood in accordance with 10 C.S.R. 20-8.300[]" and reversed the department's decision to issue the Trenton Farms CAFO permit. *Trenton Farms Re, LLC v. Mo. Dep't of Nat. Res.*,

---

[2] This appeal was authorized by sections 621.250 and 640.013.

2

504 S.W.3d 157, 160 (Mo. App. 2016). The court of appeals affirmed the clean water commission's decision in November 2016. *See id.* at 167.

The day after the appellate decision, the department of natural resources again issued a permit to Trenton Farms to establish a swine CAFO in Grundy County. Hickory Neighbors again challenged the issuance of Trenton Farms' CAFO permit before the administrative hearing commission. In its amended complaint, Hickory Neighbors claimed the department of natural resources erred in issuing the permit because Trenton Farms offered insufficient evidence to show its CAFO's manure storage structures would be protected from inundation or damage in the event of a 100-year flood, a requirement of 10 C.S.R. 20-8.300. The administrative hearing commission granted leave for Trenton Farms to intervene and heard Hickory Neighbors' appeal from the second permit in May and June 2017.

In August 2017, the administrative hearing commission recommended the clean water commission affirm the permit's issuance, finding the department of natural resources met its burden of proof and established that Trenton Farms' CAFO permit complied with existing regulations. The clean water commission scheduled consideration of the administrative hearing commission's recommendation for its December 6, 2017 meeting. On December 5, however, then-Governor Eric Greitens appointed three new members to the clean water commission: Stan Coday, John Kleiboeker, and Pat Thomas. These appointments were made in accordance with HB 1713's amendment to section 644.021.1. The commission postponed consideration of the administrative hearing commission's recommendation until December 12, 2017.

3

Before the clean water commission's December 12 meeting, Hickory Neighbors filed a motion for a continuance and a motion to disqualify three of the commissioners, including newly appointed commissioners Coday and Kleiboeker. In its motion to disqualify commissioners, Hickory Neighbors asserted commissioners Coday, Hurst,[3] Kleiboeker had conflicts of interest because they were affiliated with the Missouri Farm Bureau and the Missouri Soybean Association, both of which favor issuance of Trenton Farms' CAFO permit. On December 12, the clean water commission overruled Hickory Neighbors' motions and voted, four to zero, to accept the administrative hearing commission's recommended decision, with Commissioners Hurst and Kleiboeker not voting.[4]

Hickory Neighbors filed a petition for review with the court of appeals, pursuant to section 644.051.6. The department of natural resources and the clean water commission (collectively, the "department of natural resources") and Trenton Farms are respondents. The case was transferred to this Court after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

Hickory Neighbors raises two claims of error before this Court. First, Hickory Neighbors asserts HB 1713, which amended section 644.021.1, violated the original purpose, single subject, and clear title requirements of the Missouri Constitution. *See* Mo. Const. art. III, secs. 21, 23. Second, Hickory Neighbors claims there is insufficient competent and substantial evidence that two of the proposed manure containment

---

[3] Commissioner Ben Hurst was appointed to the clean water commission in October 2017.
[4] At the time, there was one vacancy on the clean water commission.

4

structures would be protected from inundation in the event of a 100-year flood as required by 10 C.S.R. 20-8.300.

## Standard of Review

This Court has exclusive appellate jurisdiction to determine the validity of state statutes, Mo. Const. art. V, sec. 3, and the standard of review is *de novo*. *Franklin Cty. ex rel. Parks v. Franklin Cty. Comm'n*, 269 S.W.3d 26, 29 (Mo. banc 2008). "A statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision. The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates constitutional limitations." *Id.* (internal citation omitted).

"The question of whether a party has standing is a threshold issue that this Court reviews *de novo*." *State ex rel. Kan. City Power & Light Co. v. McBeth*, 322 S.W.3d 525, 529 (Mo. banc 2010). A party has standing to challenge the constitutional validity of an adjudicatory body's composition if the party is directly subject to its authority. *See Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 824 (D.C. Cir. 1993), *cert. granted*, 512 U.S. 1218 (1994), *cert. dismissed*, 513 U.S. 88 (1994).

## Department of Natural Resources' Procedural Claims Fail

In its first claim of error, Hickory Neighbors asserts the clean water commission's decision affirming the issuance of Trenton Farms' CAFO permit is void because the clean water commission was invalidly constituted. The criteria for members of the clean water commission is set forth in section 644.021.1. In 2016, the general assembly amended

5

section 644.021.1, thereby changing the criteria for members of the clean water commission, when it passed HB 1713 over the governor's veto.

Before the 2016 amendment, section 644.021.1 required that, of the seven commissioners: two, but no more than two, members "shall be knowledgeable concerning the needs of agriculture, industry or mining[,]" one member "shall be knowledgeable concerning the needs of publicly owned wastewater treatment works[,]" and "[f]our members shall represent the public." Section 644.021.1, RSMo Supp. 2007. The 2016 amendment, however, removed the two-member limitation on commissioners who are "knowledgeable concerning the needs of agriculture, industry or mining" and limited the number of commissioners who "represent the public" to "[n]o more than four," eliminating the requirement that at least four commissioners represent the public. Section 644.021.1.

Hickory Neighbors contends HB 1713's change to the criteria for members of the clean water commission violated the Missouri Constitution's original purpose, single subject, and clear title requirements. *See* Mo. Const. art. III, secs. 21, 23. The department of natural resources, however, contends: (1) Hickory Neighbors' constitutional claims are unpreserved, (2) Hickory Neighbors should have challenged the clean water commission's membership in a *quo warranto* action, and (3) Hickory Neighbors lacks standing for its constitutional challenges.

The department of natural resources first claims Hickory Neighbors failed to preserve its challenge to HB 1713's constitutional validity for review by this Court because it did not raise the claim before seeking judicial review by the court of appeals. "Since an administrative hearing commission is not empowered to determine the constitutionality of

6

statutes, a party is not required to raise those issues at that level." *Tadrus v. Mo. Bd. of Pharm.*, 849 S.W.2d 222, 225 (Mo. App. 1993); *see also City of Joplin v. Indus. Comm'n of Mo.*, 329 S.W.2d 687, 689 (Mo. banc 1959). Accordingly, Hickory Neighbors adequately preserved the issue by raising it before the court of appeals.

The department of natural resources next claims Hickory Neighbors' constitutional challenge should be raised in a *quo warranto* action. "An information in the nature of quo warranto adjudicates title to a public office or state franchise for the purpose of protecting the public against usurpers." *State ex inf. Graham v. Hurley*, 540 S.W.2d 20, 22 (Mo. banc 1976). Because Hickory Neighbors is challenging the statute governing the clean water commission's composition rather than the individual members' title to their offices, *quo warranto* is not appropriate.[5] *See id.*

Finally, the department of natural resources argues against review of Hickory Neighbors' appeal, claiming Hickory Neighbors lacks standing to challenge the constitutional validity of HB 1713. "Generally, only those adversely affected by a statute have standing to challenge the constitutionality of the statute." *State v. Young*, 362 S.W.3d 386, 396 (Mo. banc 2012). The department of natural resources contends that, because Hickory Neighbors does not claim the clean water commission's allegedly unconstitutional composition caused it to affirm Trenton Farms' permit, Hickory Neighbors was not adversely affected by HB 1713 and, therefore, lacks standing.

---

[5] In the court of appeals, Hickory Neighbors also claimed Commissioners Coday, Kleiboecker, and Thomas had disqualifying conflicts of interest. These claims were not raised before this Court and, therefore, are abandoned.

7

Hickory Neighbors claims it has standing to challenge whether the clean water commission was properly constituted, citing a United States Supreme Court case, *Ryder v. United States*, 515 U.S. 177 (1995). Although this Court first looks to controlling Missouri precedent, no Missouri cases cited or found offer guidance on standing requirements for challenging the constitutional validity of the composition of a state commission. Federal cases addressing challenges to adjudicators' constitutional authority under the United States Constitution's appointments clause, however, provide standing requirements from an analogous procedural posture. *See NRA Political Victory Fund*, 6 F.3d at 824. These federal appointments clause cases are persuasive authority and permit this Court to analyze whether Hickory Neighbors has standing for its constitutional claims.

In *Ryder*, an enlisted member of the United States Coast Guard challenged his conviction by court martial, alleging the appointment of two members of the Court of Military Review violated the appointments clause. 515 U.S. at 179. The United States Supreme Court stated:

> We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments.

*Id.* at 182-83. In 2018, the Supreme Court applied the *Ryder* decision in a civil case, *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018). In *Lucia*, the Supreme Court permitted a defendant in a civil enforcement action by the Securities and Exchange Commission to challenge,

8

under the appointments clause, the constitutional validity of the appointment of an administrative law judge who had participated in his case. *Id.*

In *Ryder* and *Lucia*, the Court did not require the challengers to demonstrate that a properly appointed officer would have decided their cases differently. The District of Columbia circuit court clearly articulated the standing requirement for parties challenging the validity of an adjudicator's appointment under the appointments clause: "A litigant is not required to show that he has received less favorable treatment than he would have if the agency were lawfully constituted and otherwise authorized to discharge its functions. Instead, litigants need only demonstrate that they have been directly subject to the authority of the agency." *NRA Political Victory Fund*, 6 F.3d at 824 (internal citations and quotations omitted).

Hickory Neighbors' position is analogous to the defendants in *Ryder* and *Lucia*. The clean water commission adjudicated Hickory Neighbors' rights with respect to its challenge of Trenton Farms' CAFO permit, making Hickory Neighbors subject to the clean water commission's authority. To require Hickory Neighbors to prove a differently composed commission would not have affirmed Trenton Farms' permit would create a disincentive to raise constitutional challenges, just as the Supreme Court noted in *Ryder*. 515 U.S. at 183.

Moreover, applying the standing requirement implied by *Ryder* and *Lucia* and articulated in *NRA Political Victory Fund* for litigants in this circumstance is consistent with standing's purpose of preventing advisory opinions. *See State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 (Mo. banc 1982) ("Standing is related to the doctrine which

9

prohibits advisory opinions because the latter requires the court to dispose of only those issues which affect the rights of the parties present."). "An opinion is advisory if there is no justiciable controversy, such as if the question affects the rights of persons who are not parties in the case, the issue is not essential to the determination of the case, or the decision is based on hypothetical facts." *Cope v. Parson*, 570 S.W.3d 579, 586 (Mo. banc 2019). "A justiciable controversy exists if the petitioner has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination." *Id.* Hickory Neighbors' legally protectable interest is its right to appeal the issuance of Trenton Farms' CAFO permit as an "adversely affected" entity under section 621.250.2. Hickory Neighbors' constitutional challenge is ripe and genuinely opposed by the department of natural resources. Therefore, this Court's opinion deciding the issue is not advisory. *See id.*

Accordingly, under these circumstances, a challenger need only establish it was subject to the commission's authority to establish standing for a challenge to the commission's constitutional validity. Because the clean water commission adjudicated Hickory Neighbors' rights with respect to its challenge of Trenton Farms' CAFO permit, Hickory Neighbors was subject to the clean water commission's authority; therefore, Hickory Neighbors has standing to challenge the constitutional validity of the commission's composition.

### HB 1713 Is Constitutionally Valid

"A statute is presumed to be constitutional. This Court will not invalidate a statute unless it clearly and undoubtedly violates some constitutional provision and palpably

10

affronts fundamental law embodied in the constitution." *Young*, 362 S.W.3d at 390 (internal citations and quotations omitted). The statute's challenger, Hickory Neighbors, bears the burden of establishing HB 1713 is clearly and undoubtedly constitutionally invalid. *See id.*

Hickory Neighbors claims HB 1713 violates the Missouri Constitution's original purpose, single subject, and clear title requirements. Article III, section 21 outlines the "original purpose" requirement, which is that "[n]o law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose." Article III, section 23 contains "clear title" and "single subject" requirements, providing: "No bill shall contain more than one subject which shall be clearly expressed in its title, except bills enacted under the third exception in section 37 of this article and general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated." Hickory Neighbors contends HB 1713 violated these constitutional provisions when the bill was amended to include a provision changing criteria for members of the clean water commission, altering the original purpose of the bill, rendering its title unclear, and broadening its scope to cover more than a single subject.

**No Original Purpose Violation**

In recently interpreting the original purpose requirement, this Court observed:

"Purpose" is the key word of this constitutional provision. Purpose means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated. . . . Article III, section 21's restriction is against the introduction of matters not germane to the object of the legislation or unrelated to its original subject. "Germane" is defined as: in close relationship, appropriate, relative, pertinent[;] [r]elevant or closely

11

allied. Accordingly, alterations that bring about an extension or limitation of the scope of the bill are not prohibited, provided the changes are germane.

*Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 317 (Mo. banc 2019) (internal alterations, citations and quotations omitted). "A bill's original purpose is measured at the time of the bill's introduction. This Court will compare the purpose of the original bill as introduced with the bill as passed to determine whether it violates article III, section 21." *Id.* at 318 (internal citations omitted).

When introduced in January 2016, HB 1713's title was "An [a]ct [t]o amend chapter 644, RSMo, by adding thereto one new section relating to wastewater treatment systems." The original bill outlined requirements for the department of natural resources and waste water treatment providers regarding upgrades to wastewater treatment systems to assure compliance with discharge requirements. Senate Amendment 1, however, changed the membership criteria for the clean water commission set forth in section 644.021.1.

The question this Court must decide is whether the membership composition of the clean water commission is germane to the HB 1713's original purpose of amending chapter 644 to add a provision relating to wastewater treatment systems. "This Court liberally interprets the procedural limitation of original purpose," *id.* at 317, and "[t]his Court resolves all doubts in favor of the procedural and substantive validity of legislative acts." *Mo. Ass'n of Club Execs. v. State*, 208 S.W.3d 885, 888 (Mo. banc 2006).

Missouri's Clean Water Law defines "[t]reatment facilities" as "any method, process, or equipment which removes, reduces, or renders less obnoxious water contaminants released from any source." Section 644.016(23). Although "wastewater

12

treatment systems" are not defined, they clearly fall within the category of "treatment facilities." Several of the clean water commission's powers and duties, as identified by section 644.026, directly relate to the regulation of treatment facilities, including wastewater treatment systems. *See* Section 644.026. For instance, the clean water commission is required to "inspect the construction of *treatment facilities*," "[i]ssue . . . permits . . . for the installation, modification or operation of *treatment facilities*," and "[r]equire proper maintenance and operation of *treatment facilities*." *See* Section 644.026(12), (13), (15) (emphasis added). Accordingly, the regulation of wastewater treatment systems is squarely within the clean water commission's purview.

The membership of a regulatory body is germane to the regulation of matters it has the power and duty to oversee. Therefore, HB 1713's inclusion of a provision changing the membership criteria for the clean water commission does not offend article III, section 21's original purpose requirement.

### No Single Subject Violation

Hickory Neighbors also claims HB 1713's inclusion of the provision changing the membership criteria for the clean water commission violates article III, section 23's single subject requirement. This Court summarized the test for the article III, section 23's single subject requirement in *C.C. Dillon Co. v. City of Eureka*:

> The test to determine if a bill contains more than one subject is whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish its purpose. This test does not concern the relationship between individual provisions, but between the individual provision and the subject as expressed in the title.

12 S.W.3d 322, 328 (Mo. banc 2000) (internal citation omitted). This Court determines a bill's subject by looking to its title when finally passed. *Calzone*, 584 S.W.3d at 321.

HB 1317's title when passed indicates its contents relate to the "regulation of water systems." The composition of the clean water commission, a body that regulates "the waters of the state," *see* section 644.026(2), fairly relates to the regulation of water systems. Therefore, HB 1713 does not violate article III, section 23's single subject requirement.

## No Clear Title Violation

"The purpose of the clear title requirement is to keep legislators and the public fairly apprised of the subject matter of pending laws. This requirement is violated when the title is underinclusive or too broad and amorphous to be meaningful." *State v. Salter*, 250 S.W.3d 705, 709 (Mo. banc 2008) (internal citations omitted). When finally passed, HB 1713's title was: "To repeal sections 256.437, 256.438, 256.439, 256.440, 256.443, and 644.021, RSMo, and to enact in lieu thereof nine new sections relating to the regulation of water systems, with an emergency clause for a certain section."

Hickory Neighbors claims HB 1713's title is underinclusive because the composition of the clean water commission "is not germane to . . . 'the regulation of water systems.'" For the reasons listed above, this argument is unpersuasive. The clean water commission itself regulates the waters of Missouri; therefore, HB 1713's title clearly apprised legislators of its subject matter and does not violate the clear title requirement of article III, section 23.

**Sufficient Evidence CAFO Structures Meet Regulatory Requirements**

In its second claim of error, Hickory Neighbors contends the clean water commission erred in approving Trenton Farms' permit because there is insufficient competent and substantial evidence that two of the proposed manure containment structures would be protected from inundation in the event of a 100-year flood as required by 10 C.S.R. 20-8.300.[6] This Court defers "to the [clean water commission]'s findings of fact and will overturn [the commission's] judgment only if it is unsupported by competent and substantial evidence; is arbitrary, capricious, unreasonable, or involves an abuse of discretion; or the decision is unauthorized by law." *Trenton Farms*, 504 S.W.3d at 163. This Court presumes the clean water commission's decision is valid, and the burden is on Hickory Neighbors to overcome its presumptive validity. *See Wagner v. Mo. State Bd. of Nursing*, 570 S.W.3d 147, 152 (Mo. App. 2019).

10 C.S.R. 20-8.300(3)(A) does not prohibit permitting CAFOs within a flood zone; rather, the regulation requires that manure storage structures like those proposed in Trenton Farms' permit application be "protected from inundation or damage due to the one hundred- (100-) year flood." In *Trenton Farms* – the only case interpreting this requirement – the court of appeals held that compliance with the 100-year flood regulation "may be accomplished by constructing all listed sites above the 100-year flood plain or by including with the permit application certification from an engineer that all relevant sites are protected." 504 S.W.3d at 161. Therefore, a CAFO falling within a 100-year floodplain

---

[6] The flood inundation provisions in 10 C.S.R. 20-8.300 were previously numbered as 10 C.S.R. 20-8.300(4) and 10 C.S.R. 20-8.300(5).

could be permitted if there was sufficient evidence it would be protected from inundation in the event of a 100-year flood.

The parties agree that Trenton Farms' proposed CAFO is located within FEMA's 100-year floodplain. Despite this, the clean water commission affirmed the issuance of Trenton Farms' permit because it found the proposed buildings would be *above* the 100-year base flood elevation. To demonstrate compliance with 10 C.S.R. 20-8.300, Trenton Farms submitted a report from a certified flood manager, John Holmes, and a letter from an engineer, Todd Van Maanen. In his letter, Mr. Van Maanen opined that, based on Mr. Holmes's report, the Trenton Farms CAFO would be protected "from inundation and damage from a 100 year flood event per Missouri state rule 10 CSR 20-8.300(5)."

Hickory Neighbors claims "Mr. Holmes did not certify that the proposed Trenton Farms CAFO is located above the 100-year flood line or that any of the structures are protected from flood inundation." It also notes that, in an e-mail referring to a map prepared in his report, Mr. Holmes stated: "The calculated 100 year floodplain is included for information only. The 100 year floodplain limits shown on the FEMA Map and included in the drawing on the 'FLOODPLAIN-REGULATORY' layer are still what must be referenced for determining whether the project is in the floodplain." Hickory Neighbors claims that, because Mr. Holmes stated in an e-mail "the calculated 100 year floodplain is included *for information only*," his report is not substantial and competent evidence of 10 C.S.R. 20-8.300 compliance.[7]

---

[7] Hickory Neighbors also claims that, because Mr. Van Maanen did not personally prepare or supervise Mr. Holmes in the creation of his report as required by section 327.411.1, his

The clean water commission relied on the report of Mr. Holmes, a certified flood plain manager and project engineer from Allstate Consultants, determining he is an expert in the area of "river modeling and determining flood base level elevations." Contrary to Hickory Neighbors' contention, Mr. Holmes's report did conclude the Trenton Farms CAFO would be located above the 100-year flood line. In the results section of his report, Mr. Holmes concluded the lowest proposed pit in the CAFO would be 3.5 feet above the base flood elevation, which is the 100-year flood line.[8] He also concluded the lowest proposed opening to a building would be 13.5 feet above the base flood elevation. Mr. Holmes's report includes his certification as a registered professional engineer. Accordingly, Mr. Holmes's report is sufficient to satisfy either method of compliance with 10 C.S.R. 20-8.300(5) set forth in *Trenton Farms*. *See* 504 S.W.3d at 161. That Mr. Holmes referred to his calculation of the 100-year floodplain as "for information only" in an e-mail does not render his report's certified conclusions incompetent or insubstantial. Given this evidence, the clean water commission did not err in finding that Trenton Farms' manure storage structures would be in compliance with 10 C.S.R. 20-8.300(3)(A).

---

letter must be disregarded; therefore, no substantial or competent evidence supports the decision of the department of natural resources to issue Trenton Farms' permit. Because Hickory Neighbors raised this claim of error for the first time in its substitute brief in this Court, it is unpreserved and will not be reviewed. *See State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 129 (Mo. banc 2000).

[8] FEMA defines "base flood elevation" as "[t]he computed elevation to which floodwater is anticipated to rise during the base flood," and defines "base flood" as "[t]he flood having a one percent chance of being equaled or exceeded in any given year. This is the regulatory standard also referred to as the '100-year-flood.'" *Base Flood Elevation*, FEDERAL EMERGENCY MANAGEMENT AGENCY (Dec. 19, 2019), https://www.fema.gov/base-flood-elevation; Base Flood, FEDERAL EMERGENCY MANAGEMENT AGENCY (Jan. 27, 2020), https://www.fema.gov/base-flood.

**Conclusion**

HB 1713 does not violate the original purpose, single subject, or clear title requirements of article III, sections 21 and 23 of the Missouri Constitution, and the clean water commission's decision sustaining the issuance of the Trenton Farms CAFO permit is supported by competent and substantial evidence. The decision of the clean water commission is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.