

# SUPREME COURT OF MISSOURI
## en banc

THERON INGRAM, )    *Opinion issued November 19, 2019*
          )
          Respondent, )
          )
v.          )    No.  SC97812
          )
BROOK CHATEAU, )
          )
          Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY**
**The Honorable Justine E. Del Muro, Judge**

### I.      Introduction

Brook Chateau appeals the circuit court's overruling of its motion to dismiss and compel arbitration pursuant to § 435.440.1.[1]  It argues the circuit court was required to compel arbitration under § 435.355 because Brook Chateau attached a valid arbitration agreement to its motion, signed on behalf of Theron Ingram pursuant to the authority granted by a written durable power of attorney, and Ingram refuses to arbitrate.  The circuit court's order is reversed, and the case is remanded.

### II.      Factual and Procedural History

On November 6, 2015, Theron Ingram was admitted to a hospital after a severe motor vehicle collision which left him a quadriplegic.  Prior to his discharge from the

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

hospital, Ingram executed a written Durable Power of Attorney ("DPOA") providing in part:

> **1. Selection of Agent**. I, Theron Ingram, currently a resident of Jackson County, Missouri, appoint the following person as my true and lawful attorney-in-fact ("Agent"):
>
> Name: Andrea Nicole Hall. …
>
> **3**. **Durability**. This is a Durable Power of Attorney, and the authority of my Agent, when effective, shall not terminate or be void or voidable if I am or become disabled or incapacitated or in the event of later uncertainty as to whether I am dead or alive.[2]
>
> **4. Effective Date**. This Durable Power of Attorney is effective immediately and continues if I am incapacitated and unable to make and communicate a health-care decision as certified by two physicians.
>
> **5. Agent's Powers**. I grant to my *Agent full authority* to: …
>
> > B. Make all necessary arrangements for health care services on my behalf and to hire and fire medical personnel responsible for my care;
> >
> > *C. Move me into, or out of, any health care or assisted living/residential care facility or my home (even if against medical advice) to obtain compliance with the decisions of my Agent;*
> >
> > D. Take any other action necessary to do what I authorize here, including, but not limited to, granting any waiver or release from liability required by any health care provider and taking any legal action at the expense of my estate to enforce this Durable Power of Attorney for Health Care;
> >
> > E. Receive information regarding my health care, obtain copies of and review my medical records, consent to the disclosure of my medical records, and act as my "personal representative" as defined in the regulations [45 C.F.R. 164.502(g)] enacted pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")[.]

---

[2] This paragraph ensures compliance with § 404.705.1.

(Emphasis added).

On March 15, 2016, Ingram was discharged from the hospital and admitted to Brook Chateau, a residential care facility in Jackson County, Missouri. On the day of Ingram's admission, Hall executed a "Voluntary Arbitration Agreement" ("the Agreement") with Brook Chateau on Ingram's behalf. The Agreement provided, in part:

> **1. Agreement to Arbitrate "Disputes"**: All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center … shall be submitted to arbitration. …
>
> **8. Right to Change Your Mind**: This Agreement may be cancelled by written notice sent by certified mail to the Center's Administrator within 30 calendar days of the Patient's date of admission. If alleged acts underlying the dispute occur before the cancellation date, this Agreement shall be binding with respect to those alleged acts. If not cancelled, this Agreement shall be binding on the Patient for this and all of the Patient's subsequent admissions to the Center or any Sister Center without any need for further renewal.
>
> **9. Binding on Parties & Others**: The Parties intend that this Agreement shall benefit and bind the Center, its parent, affiliates, and subsidiary companies, and shall benefit and bind the Patient (as defined herein), his/her successors, spouses, children, next of kin, guardians, administrators, and legal representatives. …
>
> **14. Health Care Decision**: The Parties hereby stipulate that the decision to have the Patient move into this Center and the decision to agree to this Agreement are each a health care decision. The Parties stipulate that there are other health care facilities in this community currently available to meet the Patient's needs.

In February 2018, Ingram filed a three-count petition in Jackson County alleging claims of negligence and seeking punitive damages. He alleges his quadriplegic state prevented him from turning himself independently and that "the nurses and staff at Brook

Chateau failed to properly turn [him]." Ingram alleges this failure resulted in his development of pressure ulcers and multiple wounds.

Brook Chateau responded to the petition by filing a motion to dismiss and compel arbitration. Attached to the motion was the signed agreement. The circuit court, in line with § 435.355.1 calling for a summary procedure,[3] considered no evidence other than the documents attached to the pleadings and overruled Brook Chateau's motion. Brook Chateau appealed pursuant to § 435.440.1(1).[4] The court of appeals affirmed the circuit court's order, and this Court granted transfer.[5]

### III. Standard of Review

The overruling of a motion to compel arbitration is reviewed *de novo*. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018). The interpretation of a durable power of attorney is a question of law, also reviewed *de novo*. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).[6]

---

[3] "[I]f the opposing party denies the existence of the agreement to arbitrate, **the court shall proceed summarily to the determination of the issue so raised** and shall order arbitration if found for the moving party[.]" § 435.355.1 (emphasis added).

[4] "An appeal may be taken from … [a]n order denying an application to compel arbitration made under section 435.355." § 435.440.1(1).

[5] Mo. Const. art. V, § 10.

[6] The dissenting opinion correctly acknowledges the relevant standard of review—*de novo*. Slip op. at 3. However, in the very next paragraph, the dissenting opinion suggests this opinion's analysis is "inappropriate … because the parties did not advocate this analysis[.]" *Id*. at 4. It seems the dissenting opinion is critical of the decision to focus the legal analysis on the DPOA provision expressly authorizing Hall to move Ingram into a residential care facility rather than focusing on the general health care provisions. To suggest this is inappropriate because the parties did not advocate for it is directly contrary to the basic tenets of *de novo* review, which is applied to review purely legal questions. *See State v. Andrews*, 329 S.W.3d 369, 371 (Mo. banc 2010). It also ignores that parties cannot stipulate to questions of law. *Cope v. Parson*, 570 S.W.3d 579, 586 n.5 (Mo. banc 2019); *State v. Douglass*, 544 S.W.3d 182, 193 n.11 (Mo. banc 2018). Although the circuit court's ruling is silent on its legal reasoning, this misguided advocacy likely contributed to the circuit court's failure to compel arbitration in the first place.

4

## IV.    Analysis

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract*."  § 435.350 (emphasis added).  "On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court *shall* order the parties to proceed with arbitration[.]"  § 435.355 (emphasis added).

Ingram does not dispute the validity of the Agreement that was presented to the circuit court and attached to the motion to compel arbitration.  Instead, Ingram argues the Agreement was not enforceable because the DPOA presented with the pleadings did not grant Hall the authority to execute a binding arbitration agreement on Ingram's behalf. This argument rests on language in the DPOA granting Hall the authority to "[m]ake all necessary arrangements for health care services on [Ingram's] behalf[.]"  Because the Agreement was voluntary and not a precondition to receiving care at Brook Chateau, Ingram argues it was outside the scope of Hall's authority because it was not a "necessary" arrangement under the DPOA.  Regardless of what authority the "necessary arrangements" clause grants Hall, Ingram's argument ignores that Hall had express, actual authority to move him into residential care facility, from which her authority to sign the Agreement—a document incidental to admission—derived.

Under a durable power of attorney, the relationship between the attorney in fact and the principal is an agency relationship. § 404.703(1).[7] "An attorney in fact shall exercise authority granted by the principal in accordance with the instrument setting forth the power of attorney[.]" § 404.714.7. The dissenting opinion cites *In re Estate of Lambur*, 397 S.W.3d 54, 64 (Mo. App. 2013) to support that powers of attorney are to be strictly construed and therefore, attorneys in fact cannot have implied authority under a durable power of attorney. However, a strict construction does not preclude implied authority to act, as demonstrated by § 404.710.6(1)-(12).[8] That section lists the specific actions the General Assembly has determined ***must*** be expressly authorized by the durable power of attorney to be carried out by the attorney in fact.[9] Otherwise, a third party "may freely rely on, contract and deal with an attorney in fact delegated general powers with respect to the subjects and purposes … expressed in the power of attorney … without regard to whether the power of attorney expressly authorizes the specific act, transaction or decision by the attorney in fact." § 404.710.8. The attorney in fact who elects to "exercise the authority conferred in the power of attorney[] has a fiduciary obligation to exercise the powers conferred in the best interests of the principal[.]" § 404.714.1. "[A]n attorney in fact who elects to act shall exercise the authority granted

---

[7] Section 404.703(1) defines "attorney in fact" as "an individual … appointed to ***act as agent*** of a principal in a written power of attorney." (Emphasis added). Further, the DPOA repeatedly refers to Hall as "Agent."

[8] Arbitration agreements are not included in the statute.

[9] Notably, *Lambur* concerns § 404.710.6(3), one of the 12 actions for which the General Assembly has required express authorization in the DPOA. *Lambur*, 397 S.W.3d at 64. The *Lambur* court's strict construction was employed to determine whether the DPOA expressly authorized an action which, by statute, was required to be expressly authorized. *Id*. at 64-65. The court of appeals opinion does not support that a strict construction requires ***all*** actions carried out by the attorney in fact to be expressly authorized, and that assertion is inconsistent with the very purpose of a power of attorney.

6

in a power of attorney with that degree of care that would be observed by a prudent person … conducting the affairs of another[.]" *Id.*

"Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which ***are incidental to it***, ***usually accompany it***, ***or*** are reasonably necessary to accomplish it."  Restatement (Second) Agency § 35 (Am. Law Inst. 1958) (emphasis added).  "An agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts."  *Id.* § 33.  An agent's incidental authority is ultimately defined by the principal's purpose in granting the authority:

> Whatever the original agreement or authority may have been, [the agent] is authorized at any given moment to do, and to do only, what [s]he reasonably believes the principal desires [her] to do, in the light of what [s]he knows or should know of the principal's purpose and the existing circumstances.

*Id.* cmt. a.

The DPOA grants Hall "full authority" to move Ingram into a residential care facility.  As a natural part of the residential care facility admission process, a host of documents are presented to the patient to be signed in conjunction with their admission. These admission documents often include a binding arbitration agreement.  *See generally Kindred Nursing Ctrs., Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425 (2017); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 531 (2012).  Hall's authority to move Ingram into a residential care facility necessarily carries with it the authority to sign

admission documents on Ingram's behalf.[10]   Whether the arbitration agreement was voluntary is inapposite to the question of authority to sign the document on Ingram's behalf.  Because the Agreement was presented in connection with Ingram's admission to Brook Chateau, there was no reason for Hall to doubt she had the authority to sign it on Ingram's behalf as part of her express "full authority" to move Ingram into a residential care facility.

## V.    Conclusion

The Agreement was signed by Hall on behalf of Ingram pursuant to Hall's authority established by the DPOA.  It was presented to the circuit court alongside Brook Chateau's motion to dismiss and compel arbitration.  At that point, § 435.355 obligated the circuit court to order the parties to proceed to arbitration.  The circuit court's order overruling Brook Chateau's motion to compel arbitration is reversed, and the case is remanded.

_____
Zel M. Fischer, Judge

Wilson, Powell and Breckenridge, JJ., concur;
Russell, J., dissents in separate opinion filed;
Draper, C.J. and Stith, J., concur in opinion of Russell, J.

---

[10] Under the dissenting opinion's interpretation of the DPOA, if Hall truly lacked authority to enter into the arbitration agreement because it was not necessary, she did not have the authority to admit him into Brook Chateau in the first place because § 14 of the DPOA provides "[t]he parties stipulated that the decision to move Ingram into Brook Chateau [was] a health care decision and there [were] other health care facilities in the community currently available."



# SUPREME COURT OF MISSOURI
## en banc

THERON INGRAM, )
)
      Respondent, )
)
v. )     No. SC97812
)
BROOK CHATEAU, )
)
      Appellant. )

### DISSENTING OPINION

I respectfully dissent. Although I concur with the principal opinion that the scope of the Durable Power of Attorney for Healthcare (the "DPOA"), executed by Theron Ingram, controls the outcome of this case, I disagree that the terms of the DPOA authorized the agent to execute any unnecessary documents, such as the voluntary arbitration agreement. The DPOA limited the agent's authority to "[m]ake all *necessary* arrangements for health care services" and "[t]ake any other action *necessary* to do what [the principal] authorize[d]" in the DPOA. (Emphasis added). Ingram did not grant his agent authority to enter into a *voluntary* arbitration agreement such as the one here – a contract expressly stating it was not required for his admission to Brook Chateau. Forfeiting the right to have a dispute settled by a court was unrelated to making necessary

arrangements for health care services, and agreeing to arbitration was not a necessary action to accomplish what Ingram authorized. Because the agent lacked authority to bind Ingram, no arbitration agreement existed between Ingram and Brook Chateau. Accordingly, I would affirm the circuit court's order overruling Brook Chateau's motion to dismiss and compel arbitration.

## Background

Ingram, who was rendered quadriplegic in a motor vehicle collision, executed the DPOA, appointing Andrea Nicole Hall as his attorney-in-fact. The DPOA granted Hall the authority to, among other things not relevant here:

    A. Give consent to, prohibit, or withdraw any type of health care, long-term care, hospice or palliative care, medical care, treatment, or procedure, either in my residence or a facility outside of my residence, even if my death may result, including, but not limited to, an out of hospital do-not-resuscitate order . . . ;

    B. Make all *necessary* arrangements for health care services on my behalf and to hire and fire medical personnel responsible for my care;

    C. Move me into, or out of, any health care or assisted living/residential care facility or my home (even if against medical advice) to obtain compliance with the decisions of my Agent;

    D. Take any other action *necessary* to do what I authorize here, including, but not limited to, granting any waiver or release from liability required by any health care provider and taking any legal action at the expense of my estate to enforce this Durable Power of Attorney for Health Care[.]

(Emphasis added).

Brook Chateau, a residential care facility, admitted Ingram. Three days later, Hall executed a document titled "VOLUNTARY ARBITRATION AGREEMENT" ("Agreement"). Hall signed the Agreement in her name as "Patient's Legal

2

Representative in his/her Representative capacity." The opening clause of the Agreement provided:

> THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ CAREFULLY BEFORE SIGNING. *THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED.*

(Emphasis added).

Ingram subsequently filed a lawsuit against Brook Chateau alleging claims of negligence and seeking punitive damages. Brook Chateau filed a motion to dismiss and compel arbitration. Brook Chateau argued that, pursuant to the Agreement, Ingram and Brook Chateau had agreed to binding arbitration over all claims related to Ingram's care. The circuit court overruled the motion to dismiss and compel arbitration.

**Standard of Review**

"An appellate court's review of the arbitrability of a dispute is de novo" because "[w]hether a dispute is covered by an arbitration provision is relegated to the courts as a question of law." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003).[1] "[T]he interpretation of a written power of attorney is [also] a question of law." *Elam v. Dawson*, 216 S.W.3d 251, 253 (Mo. App. 2007).

---

[1] The procedure outlined by statute is found in section 435.355.1, RSMo 2016:
> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, *but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.*"

**Analysis**

The principal opinion must point to one or more of the powers granted in the

DPOA that would authorize Ingram to execute the Agreement because, as the principal

opinion acknowledges, "An attorney in fact shall exercise authority granted by the

principal in accordance with the instrument setting forth the power of attorney[.]"

Section 404.714.7, RSMo 2016.[2] Ingram and Brook Chateau briefed and argued the

meaning of provisions of the DPOA. But, perhaps because the language of the DPOA

specifically precludes entering into unnecessary health care arrangements, the principal

opinion instead, to support its claim that Hall had the authority to sign the Agreement,

*sua sponte* applies general principal/agency rules to the provision granting Hall the

authority to move Ingram into, or out of, a residential care facility. This is inappropriate

not only because the parties did not advocate this analysis,[3] but also because the terms of

the agreement entered into by the parties necessarily govern over general agency

---

(Emphasis added). Pursuant to this statute, the question of whether the agreement to arbitrate exists is for the court to decide, and, absent the existence of the agreement to arbitrate, the court must not compel arbitration.

[2] This statute applies to a durable power of attorney for health care. Section 404.810, RSMo 2016.

[3] I do not contest that the interpretation of this DPOA is a question of law, subject to plenary review on appeal; this is important if a mistake of law was made in the circuit court. My concern is that the principal opinion steps outside of its role as referee and instead takes the position of advocate. If Brook Chateau desired to rest its case upon the provision of the DPOA authorizing Hall to move Ingram into a residential care facility, it could have done so. Importantly, this would have allowed Ingram the opportunity to respond. The circuit court and court of appeals could have considered the legal argument. *De novo* review would not require this Court's deference to these legal findings, but at least the advocacy would have occurred and there would have been substance upon which to base this decision. There is a reason this Court considers the disposition of cases after briefing and oral argument. The parties frame their own dispute and provide this Court with valuable insight into the issues.

principles. While the principal opinion is correct in holding that Hall had express, actual authority to move Ingram into Brook Chateau, pursuant to Paragraph C of the DPOA, it is incorrect that Hall had the authority to execute the Agreement. Waiving the right to a jury trial or to have a court settle a dispute was totally irrelevant and not required for Ingram's admission into Brook Chateau.

The principal opinion cites the Restatement (Second) of Agency § 35 (Am. Law Inst. 1958): "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." The comments and illustrations accompanying this Restatement section do not support the broad grant of power that the principal opinion implies.[4] Moreover, the principal opinion does not recognize that a narrow reading of paragraph C of the DPOA is appropriate. "Powers of attorney are to be strictly construed." *In re Estate of Lambur*, 397 S.W.3d 54, 64 (Mo. App. 2013).[5] Paragraph C gives Hall the authority to move Ingram into, or out of, any health care or assisted living/residential care facility. This provision gives no other grant of power. If the agent required further guidance on an action taken pursuant to Paragraph C, the agent would need to reference Paragraph D. Paragraph D would then inform the agent that she could

---

[4] The first illustration, for example, provides: "P authorizes A to purchase and obtain goods for him but does not give him money to pay for them. There being no arrangement that A is to supply the money or buy upon his own credit, A has authority to buy upon P's credit." Restatement (Second) of Agency § 35 illus. 1. Clearly, A could not accomplish P's intent without taking this action. In the case at hand, Hall could have accomplished Ingram's intent of transfer into a residential care facility without signing the Agreement.

[5] Any reading of a durable power of attorney *for healthcare* should be construed narrowly to limit the exercise of the agent's powers to the effect of carrying out the principal's healthcare decisions and nothing else.

5

"[t]ake any other action *necessary* to do what [the principal] authorize[d] here." (Emphasis added). The agent could not execute any instrument on behalf of the principal that was voluntary or unnecessary.

The principal opinion goes far beyond the Restatement sections on which it relies in holding, "Because the Agreement was presented in connection with Ingram's admission to Brook Chateau, there was no reason for Hall to doubt she had the authority to sign it on Ingram's behalf as part of her express 'full authority' to move Ingram into a residential care facility." Slip op. at 8. I cannot subscribe to a reading of Paragraph C that allows the patient's agent to execute legal instruments not required for admission, as this goes far beyond the authority granted by the DPOA and far beyond any implicit authority set out in the Restatement (Second) of Agency. I fear the principal opinion would go far toward allowing agents to bind a vulnerable segment of the population beyond healthcare decisions that the instrument was designed to serve.

I also part from the principal opinion's reliance on the comment to section 33 of the Restatement (Second) of Agency. Section 33's black letter statement of the law suffices: "An agent is authorized to do, *and to do only*, what it is reasonable for him to infer that the principal desires him to do *in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts*." (Emphasis added). Nothing in the DPOA indicated an intent to allow Hall to enter into unnecessary transactions. The Agreement Hall signed specified clearly that "THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED." Although Hall had authority to move Ingram into or out of any residential

6

care facility, she had no authority to enter into the Agreement waiving Ingram's right to a judge or jury trial if a dispute arose.

Despite acknowledging the Agreement signed by Hall was *voluntary* and not a precondition to admission at Brook Chateau, the principal opinion glosses over the limitation of authority imposed by Ingram in the DPOA to "[m]ake all *necessary* arrangements for health care services" and to "[t]ake any other action *necessary* to do what [Ingram] authorize[s] here." (Emphasis added). Under the facts of this case, it was not necessary for Hall to have executed the Agreement, which was denominated as "voluntary" and contained a clear statement that the patient would be admitted without signing it. The scope of this DPOA did not give Hall the authority to execute the Agreement.

### Conclusion

For these reasons, I would affirm the circuit court's order overruling Brook Chateau's motion to dismiss and compel arbitration.

_____
Mary R. Russell, Judge

7