

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| MARY BIRMINGHAM, ET AL., | ) | No. ED110632 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | |
| | ) | Honorable Troy A. Cardona |
| TITLEMAX OF MISSOURI, INC., | ) | |
| | ) | |
| Appellant. | ) | Filed: November 21, 2023 |

### Introduction

TitleMax of Missouri, Inc. ("TitleMax") appeals the circuit court's judgment overruling its motion to compel arbitration against Mary Birmingham, Cody Bishop, Tony Black, James Blancas, Rudolph Bledsoe, Chrystal Blocker, Levita Blockton, Steven Blome, Jessica Bogert, and Maudrea Boles (collectively, "Plaintiffs").[1] TitleMax raises two points on appeal. In Point I, TitleMax alleges the circuit court erred in overruling its motion to compel arbitration because the parties entered into valid and enforceable loan agreements which contained valid arbitration agreements TitleMax is entitled to enforce.[2] In Point II, TitleMax argues the circuit court erred in overruling its motion to compel arbitration because several, but not all, Plaintiffs' loan agreements contained delegation clauses requiring the arbitrator to resolve threshold issues of arbitrability.

---

[1] All Plaintiff names are spelled as reflected by the entries of the parties and attorneys of record on Case.net.

[2] Plaintiffs characterize TitleMax's loan agreements as "title loans." TitleMax asserts it provides "consumer installment loans." This Court need not resolve this dispute to dispose of the appeal and will refer to the documents as "loan agreements."

For the reasons stated in *Abram et al. v. TitleMax of Missouri, Inc.*, No. ED110631, ___ S.W.3d ___ (Mo. App. E.D. Nov. 21, 2023), handed down this same date, this Court holds the circuit court did not err in overruling TitleMax's motion to compel arbitration under our standard of review directing us to affirm the circuit court's judgment on any grounds supported by the record. Here, the American Arbitration Association ("the AAA") notified Plaintiffs' counsel and TitleMax's counsel in November 2019, it administratively closed arbitration proceedings initiated by other TitleMax consumers represented by Plaintiffs' counsel ("*Abram* plaintiffs") because TitleMax failed to comply with the AAA's consumer rules ("the AAA Letter"). The AAA Letter advised the *Abram* plaintiffs and TitleMax that due to TitleMax's failure to comply with AAA policies, "we must decline to administer this claim *and any other claims between TitleMax . . . and its consumers at this time*." (Emphasis added). This Court holds because Plaintiffs in this appeal were TitleMax "consumers" who had a "claim" with TitleMax "at this time" when the AAA declined to administer the *Abram* plaintiffs' arbitration claims under AAA Consumer Rule R-1(d), the circuit court reasonably could have found the AAA Letter authorized Plaintiffs to submit their claims against TitleMax to the circuit court.[3] Accordingly, the circuit court did not err in failing to order to the parties to engage in arbitration proceedings. The circuit court's judgment is affirmed.

### Factual and Procedural Background

This appeal is one of ten nearly identical proceedings pending before this Court.[4] For a detailed factual recitation of the parties' nearly identical disputes and the parties' protracted procedural history, this Court directs the parties' attention to the *Abram* opinion to avoid repetition.

---

[3] All references to the AAA Consumer Rules are to those Rules Amended and Effective September 2014, with Costs of Arbitration Amended and Effective September 2, 2018.

[4] *See also Abram et al. v. TitleMax of Missouri, Inc.*, No. ED110631; *Anderson et al. v. TitleMax of Missouri, Inc.*, No. ED110629; *Arteaga et al. v. TitleMax of Missouri, Inc.*, No. ED110625; *Baker et al. v. TitleMax of Missouri, Inc.*,

Relevant to this appeal, on November 6, 2019, Plaintiffs sued TitleMax alleging five counts: (I) a private right of action under chapter 367 regulating pawnbrokers and small loans; (II) chapter 408 violations regulating legal tender and interest; (III) Uniform Commercial Code violations; (IV) breach of contract; and (V) breach of the arbitration agreement. Plaintiffs alleged they signed a standardized form for a "title loan" agreement secured by his or her motor vehicle title. Plaintiffs alleged TitleMax acted as a "title lender" without a "title loan license" for each plaintiff's agreement. Plaintiffs raised Count IV, breach of contract, in the alternative to Count I for each plaintiff found to have a valid and enforceable "title loan" agreement. Plaintiffs brought Count V, breach of the arbitration agreement, "for each plaintiff who TitleMax maintains is bound by a valid and enforceable arbitration agreement." Plaintiffs alleged TitleMax agreed to pay all filing, hearing, and third-party arbitrator fees. Plaintiffs demanded TitleMax advance or pay these fees so each plaintiff could file an individual arbitration for covered disputes. Plaintiffs maintained they acted in good faith, they could not get a fee waiver, and TitleMax refused to advance or pay the fees. Plaintiffs averred TitleMax breached the arbitration agreements by failing to comply with the AAA's policies regarding consumer claims. Plaintiffs further alleged, "Because the AAA declined to administer any arbitration by TitleMax, each plaintiff bound by a valid and enforceable arbitration agreement that covers a dispute with TitleMax may submit his or her dispute to the appropriate court for resolution." Plaintiffs sought actual damages not less than the arbitration fees for Count V.

In June 2020, TitleMax filed its motion to compel arbitration and stay litigation. On May 18, 2022, the circuit court summarily overruled TitleMax's motion to compel arbitration in

No. ED110628; *Beckermann et al. v. TitleMax of Missouri, Inc.*, No. ED110630; *Bollin et al. v. TitleMax of Missouri, Inc.*, No. ED110624; *Bracy et al. v. TitleMax of Missouri, Inc.*, No. ED110626; *Brizendine et al. v. TitleMax of Missouri, Inc.*, No. ED110633; and *Brown et al. v. TitleMax of Missouri, Inc.*, No. ED110627, the appeals which were handed down this same date.

all ten lawsuits, stating, "Hearing held. [TitleMax's] motion to compel arbitration is denied. The case is stayed pending the outcome of any appeal of this Order." TitleMax appeals.[5]

## Standard of Review

An appellate court's "review of the [circuit] court's determination as to the existence of an [arbitration] agreement itself is analogous to that in a court-tried case." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020) (quoting *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 480 (Mo. App. E.D. 2010)). "On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "[A] judgment in a court-tried case will be affirmed on any basis supported by the record." *Peoples Nat'l Bank, N.A. v. Fish*, 600 S.W.3d 273, 278 (Mo. App. E.D. 2020). "In reviewing a court-tried case, we review the evidence in a manner favorable to the judgment, disregarding contradictory evidence, and we defer to the trial court's credibility determinations." *Theroff*, 591 S.W.3d at 437 (quoting Rule 73.01(c)) ("With no written findings of fact, this Court views the facts 'as having been found in accordance with the result reached.'").

"If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012). "Generally, the party not having the burden of proof on an issue need not offer *any* evidence concerning it." *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010). "[T]he trier of fact has the right to disbelieve evidence, even when it is not contradicted." *Id.*

---

[5] The denial of a motion to compel arbitration is appealable under section 435.440, RSMo (2016). *St. Louis Reg'l Convention v. Nat'l Football League*, 581 S.W.3d 608, 613 n.3 (Mo. App. E.D. 2019).

"If there is no factual dispute about the existence of an arbitration agreement, the overruling of a motion to compel arbitration is reviewed *de novo*." *Theroff*, 591 S.W.3d at 436. *Theroff* further explains "a *de novo* standard of review is appropriate for appellate review of a denial of a motion to compel arbitration when a court must analyze the terms of an arbitration agreement." *Id*. Because this opinion discusses whether the circuit court's judgment should be affirmed on the basis of the AAA Letter, not the terms of any of the seven arbitration agreements, we apply the *Murphy v. Carron* standard to our analysis.

## Discussion

*Point I: Valid and Enforceable Arbitration Agreement*
*Party Positions*

TitleMax's first point relied on states, "The circuit court erred in denying TitleMax's motion to compel arbitration because the parties entered into valid and enforceable consumer installment loan agreements which contain arbitration provisions, in that the issues preserved for appeal show offer, acceptance, and valid consideration for agreements that TitleMax is entitled to enforce." In its argument supporting this point, TitleMax also contends Plaintiffs' claims are encompassed by the arbitration agreements which define "dispute" broadly. TitleMax further argues it did not waive its arbitration rights by declining to advance fees, failing to rectify issues that arose during Abram's arbitration proceeding, removing the cases to federal court, or delaying the proceedings.

Plaintiffs contend the circuit court properly overruled TitleMax's motion to compel arbitration because TitleMax must prove the existence of an arbitration agreement but presented no competent or substantial evidence to carry its burden. Plaintiffs further argue even if this Court finds valid and enforceable arbitration agreements exist, the circuit court's judgment should be affirmed because the AAA rules authorized Plaintiffs to submit their disputes to the circuit court

after the AAA declined to administer Plaintiffs' arbitration as stated in the AAA Letter. Plaintiffs also assert TitleMax waived its right to arbitrate by refusing to advance the arbitration filing fees, delaying the proceedings, and acting inconsistently with its desire to arbitrate by failing to rectify issues arising during the pre-suit "test arbitration" proceeding. Finally, Plaintiffs offer several enforceability and validity challenges, such as arguing the loan agreements are void, illegal, unconscionable, one-sided, constitute contracts of adhesion, are unlimited in scope, and are ambiguous.

*Analysis*

This Court's resolution of this appeal is governed by the extensive analysis provided in *Abram*. This Court fully incorporates into this opinion *Abram*'s analysis regarding TitleMax's unpreserved purported arguments regarding the AAA Letter's validity and the AAA's alleged procedural violations, the circuit court's lack of obligation to examine the parties' supplemental filings proffered only on the authority of a proposed order filed by TitleMax's counsel that the circuit court never signed, and this Court's declination to review contested factual issues on a record devoid of transcripts and other documentation to support TitleMax's assertions. This Court also incorporates herein its responses in *Abram* to the dissenting opinion's assertions. *See Abram*, *Slip Op*. at 14-24.

This Court now turns to explain how the AAA Letter authorizing Plaintiffs to file their disputes in the circuit court is a reasonable theory supported by the pleadings and evidence to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs. Here, there is no record these Plaintiffs filed any demand with the AAA before the AAA Letter was issued. Yet, the lack of a record under these circumstances does not foreclose Plaintiffs from pursuing their claims in court.

6

When explaining its declination to administer the filed arbitration, the AAA Letter stated, "we must decline to administer this claim *and any other claims between TitleMax . . . and its consumers at this time*." Emphasis added. Using the term "consumers" in this context, rather than "claimant," is a distinction with a difference. The AAA Letter referred to the *Abram* plaintiffs as "Claimant" or "filing party" throughout the correspondence, but used the word, "consumers," when addressing the breadth of its declination to administer TitleMax arbitrations going forward. The AAA Letter used the phrase "at this time," to delineate the time period to mean those consumers who had a claim when the AAA declined to administer further arbitrations with the *Abram* plaintiffs and before TitleMax cured the registration issue. Use of the phrase, "this claim and any other claims," likewise supports the AAA Letter's intent to reach beyond the *Abram* plaintiffs because "this claim" refers to the *Abram* plaintiffs' disputes while "any other claims between TitleMax . . . and its consumers" refers to additional disputes TitleMax may have with its consumers "at this time." The AAA Letter's usage of the plural to describe "any other claims" and "consumers" included these Plaintiffs who were TitleMax "consumers" with a "claim" against TitleMax "at this time" when the AAA declined to administer the *Abram* plaintiffs' arbitration claims.

Plaintiffs sued within two days of receiving the AAA Letter and before there was any evidence presented TitleMax cured the registration issue referenced in the AAA Letter, which was a prerequisite to the AAA administering any TitleMax arbitrations going forward. The dissenting opinion's position Plaintiffs were not "a party" to the demand or the AAA's declination of the demand does not mean the AAA Letter does not apply to their claims. To adopt the dissenting opinion's analysis would force each plaintiff into an exercise in futility by filing and paying for individual arbitration when the AAA Letter clearly stated it would not administer "any other claims

between TitleMax . . . and its consumers at this time" until TitleMax rectified the registration issue. Therefore, the circuit court reasonably could have found the AAA Letter authorized Plaintiffs—as TitleMax consumers with a claim when the AAA declined to arbitrate any claims between TitleMax and its consumers due to unresolved registration issues—to file their claims in the circuit court.[6]

Because the record before this Court supports the finding the circuit court could have relied upon the AAA Letter citing AAA Rule R-1(d) to support its decision, this Court need not address TitleMax's remaining arguments, including Point II.[7]  The circuit court did not err in overruling TitleMax's motion to compel arbitration regarding Plaintiffs.  Points I and II are denied.

---

[6] The dissenting opinion mischaracterizes this Court's opinion as authorizing the remaining more than 700 consumers represented by Plaintiffs' counsel to file their claims in the circuit court under our analysis of the AAA Letter.  This Court offers no opinion with respect to the AAA Letter's application to the more than 700 consumers represented by Plaintiffs' counsel who did not file suit in November 2019.  The AAA Letter states it would consider accepting consumer disputes going forward once TitleMax completed the registration process and received confirmation from the AAA the registration was active.  Because we do not know whether or when TitleMax cured the registration issue, we cannot speak to those consumers' legal obligations when they declined to file suit after the AAA Letter issued.  To state otherwise would be to issue an impermissible advisory opinion which this Court cannot do because those consumers are not parties to these ten appeals.  *Cope v. Parson*, 570 S.W.3d 579, 586 (Mo. banc 2019) (quoting *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 324 n.3 (Mo. banc 2016)) ("An opinion is advisory if there is no justiciable controversy, such as if the question affects the rights of persons who are not parties in the case . . . .").

[7] In Point II, TitleMax acknowledged "*several* Plaintiffs' agreements contain delegation clauses," thus conceding not *all* Plaintiffs are bound by delegation clauses.  Emphasis added.  To reverse the circuit court's judgment as the dissenting opinion suggests would compel all Plaintiffs to proceed to arbitration.  One of the many challenges Plaintiffs raised to oppose arbitration was contesting the validity of the arbitration agreements.  We cannot see how this Court can order all Plaintiffs to proceed to arbitration when only the April 2007, February 2010, and June 2010 arbitration agreements contain delegation clauses requiring the parties to submit disputes about the validity of the arbitration agreement to the arbitrator.  In contrast, the November 2015, January 2016, September 2017, and March 2019 arbitration agreements expressly state "the court and not the [arbitrator]" will decide disputes about the validity, coverage, or scope of the arbitration agreements.  Without a delegation clause, courts decide the gatekeeping issue of the validity of an arbitration agreement.  *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 750 n.3 (Mo. banc 2022).  The record properly before this Court does not permit us to determine which Plaintiffs signed the contracts with a delegation clause and which did not.  Ordering *all* Plaintiffs to proceed directly to arbitration would violate both *Bridgecrest* and the contract rights of the Plaintiffs who signed a TitleMax-drafted contract without a delegation clause because an unknown number of Plaintiffs *must* go to court *before* going to arbitration, if appropriate.

8

**Conclusion**

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. concurs and
Cristian M. Stevens, J. dissents in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| MARY BIRMINGHAM, et al, | ) | No. ED110632 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 19JE-CC00816 |
| | ) | |
| TITLEMAX OF MISSOURI, INC, | ) | Honorable Troy A. Cardona |
| | ) | |
| Appellant. | ) | Filed: November 21, 2023 |

I respectfully dissent from the majority opinion affirming the judgment of the trial court. The majority opinion construes the AAA Letter, which declined the arbitration demand of only nine of the ten Plaintiffs in another appeal before us, to authorize at least all 100 Plaintiffs in all ten appeals before us, including the ten Plaintiffs in this appeal, to file their claims in the circuit court. Properly construed, the AAA Letter does not support the majority's construction and is not the "reasonable theory" to affirm the circuit court's judgment the majority opinion says it is.

Among Plaintiffs' arguments on appeal is "the circuit court's judgment should be affirmed because the AAA rules authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer Plaintiffs' arbitration as stated in the AAA Letter."

Principal Slip Op. 14; Companion Slip Op. 5-6.[1] The majority opinion holds "AAA Consumer Rule R-1(d) authorized Plaintiffs to submit their disputes to the circuit court," and the AAA Letter is "the reasonable theory supported by the pleadings and evidence to affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs." Principal Slip Op. 2, 23; Companion Slip Op. 6 (emphasis in original). That holding is not a reasonable interpretation of the AAA Letter.

The case is made more difficult by the circuit court's summary denial of the motion to compel arbitration in all ten lawsuits, as to all 100 Plaintiffs, without elaboration, other than that denying the motion to compel arbitration, unlike granting it, allowed a stay of the proceedings before the circuit court and an immediate appeal to this Court. Thus, we are left to review for, as the majority opinion puts it, "any reasonable theory within the pleadings that is supported by the evidence" to justify the circuit court's judgment. Principal Slip Op. 16 (quoting *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010)). In my opinion, the AAA Letter, on its face, is not the reasonable theory to affirm the circuit court's judgment, and there is no other.

The sentence in the AAA Letter on which the majority opinion builds its holding is: "Accordingly, we must decline to administer this claim and any other claims between TitleMax . . . and its consumers at this time." The majority opinion emphasizes the sentence's one-time use of the word "consumers," as opposed to "claimant," as used two times elsewhere in the AAA Letter. The majority opinion takes this to mean that the AAA Letter must apply to a broader population than the nine Plaintiffs who demanded arbitration from AAA and to whom the letter

---

[1] The majority's resolution of this appeal is governed by, and fully incorporates, the extensive analysis provided in the principal *Abram* opinion. Companion Slip Op. 6. Likewise, this dissenting opinion fully incorporates the dissenting opinion in the principal *Abram* opinion.

is addressed. But, in context, that does not appear to be the meaning of the AAA Letter's reference to "consumers."

The AAA Letter states, in pertinent part:

> Prior to the filing of this arbitration, TitleMax of Missouri, Inc. failed to comply with the AAA's policies regarding *consumer* claims. Accordingly, we must decline to administer this claim and any other claims between TitleMax . . . and its *consumers* at this time. These policies can be found on our web site . . . in the *Consumer* Due Process Protocol ("Protocol") and the *Consumer* Arbitration Rules ("*Consumer* Rules"), including the Costs of the Arbitration.

> Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the *Consumer* Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. (emphasis added).

The sentence referring to "consumers," on which the majority opinion relies, is ensconced in paragraphs repeatedly referencing AAA's policies regarding "consumer claims," the "Consumer Due Process Protocol," "the Consumer Arbitration Rules," and "Rule R-1(d) of the Consumer Rules." AAA Consumer Rule R-1(d) is, as the name suggests, part of the AAA *Consumer* Arbitration Rules, as opposed to the AAA Commercial Arbitration Rules or the AAA Employment Arbitration Rules. In context, the single reference to "consumers" on which the majority's holding turns seems to be simply an indicator that AAA's policies regarding *consumer* claims, the *Consumer* Due Process Protocol, the *Consumer* Arbitration Rules, and AAA *Consumer* Rule R-1(d) apply to the nine Plaintiffs addressed in the letter, who are "consumers."[2] Had this been, for example, an employment case and had the AAA Employment Arbitration Rules applied, a reference in the AAA Letter to "employees" would not be surprising. It certainly would not mean that all employees, whether or not they demanded

---

[2] The AAA Letter also refers to the "filing party," "either party," and "all parties," instead of "claimant," suggesting the letter's similar reference to "consumers," instead of "claimant," does not bear the significance afforded it by the majority opinion.

3

arbitration from AAA and were addressed in the declination letter, could file their claims in the circuit court.

The majority opinion also interprets the phrase "at this time" at the end of the same sentence to mean the AAA Letter declined to arbitrate Abram's claims and the claims of any and all other consumers with a claim "at this time." Principal Slip Op. 25; Companion Slip Op. 7. As an initial matter, the more natural reading would seem to be that AAA "must decline . . . at this time," not that any and all consumers with a claim "at this time" may file their claims in the circuit court. Notably, the majority opinion does not define what it means to be a "consumer with a claim . . . at this time," but hints that it "refers to additional disputes TitleMax may have with its consumers 'at this time,'" which could mean just about anybody. Principal Slip Op. 25.

The majority opinion concludes that the circuit court reasonably found that the AAA Letter authorized all 100 Plaintiffs, including all ten Plaintiffs in this appeal who never demanded arbitration from AAA, to file their claims in the circuit court. Companion Slip Op. 7. Based on that interpretation, there is no reason to stop at the 100 Plaintiffs represented in these cases. The majority's interpretation of the AAA Letter may just as well authorize the 834 or 803 plaintiffs listed with Plaintiff's counsel's demand letter to file their claims in the circuit court. The majority opinion both vehemently denies this and steadfastly refuses to say. Companion Slip Op. 8 n.6 ("The dissenting opinion mischaracterizes this Court's opinion as authorizing the remaining more than 700 consumers represented by Plaintiffs' counsel to file their claims in the circuit court under our analysis of the AAA Letter. This Court offers no opinion with respect to the AAA Letter's application to the more than 700 consumers represented by Plaintiffs' counsel

who did not file suit in November 2019.").[3] For that matter, it is hard to see how the majority's interpretation of the AAA Letter does not authorize all of TitleMax's consumers literally "with a claim . . . at this time," whatever that may mean, to file their claims in the circuit court. That is because the text of the AAA Letter does not support the majority's interpretation, and that interpretation is unreasonable.

Even if, in isolation, a reasonable interpretation of the sentence on which the majority opinion relies were that AAA declined to arbitrate the claims of more than the nine Plaintiffs who demanded arbitration, the AAA Letter does not authorize all 100 Plaintiffs to file their claims in the circuit court. The AAA Letter goes on to cite AAA Consumer Rule R-1(d), and the majority opinion holds "AAA Consumer Rule R-1(d) authorized Plaintiffs to submit their disputes to the circuit court after the AAA declined to administer their arbitrations." Principal Slip Op. 2. Indeed, as the AAA Consumer Arbitration Rules go, the majority opinion expressly "confines its analysis to . . . AAA Rule R-1(d)," which it characterizes, rightly or wrongly, as "the only AAA Rule cited in the AAA Letter." Principal Slip Op. 16. But the plain language of AAA Consumer Rule R-1(d) is directly contrary to the majority's holding that the AAA Letter is the reasonable theory authorizing all 100 Plaintiffs to file their claims in the circuit court.

The AAA Letter states, "According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." As if to dispel any doubt, the majority opinion itself cites AAA Consumer Rule R-1(d) for the same proposition: "Should the AAA decline to administer an

---

[3] The majority opinion steadfastly refuses to say whether a "consumer with a claim . . . at this time" means someone who, for example, filed suit, could have filed suit, was included in the demand letter, was represented by counsel, talked to counsel, thought he had a claim, or, as the majority hints, merely "may have" a claim. Even if the majority opinion committed to any of these definitions, there would be little basis in the text of the AAA Letter.

arbitration, either party may choose to submit its dispute to the appropriate court for resolution."
Principal Slip Op. 23. This is the one sentence in both the AAA Letter and the AAA Consumer
Arbitration Rules specifying who gets to file a claim in the circuit court, which is the crux of this
case. The answer, very clearly, is "either party" to the demand for arbitration from AAA and the
declination of that demand pursuant to the AAA Letter. For that reason, the AAA Letter
concludes that, upon confirming resolution of its registration issue, TitleMax is responsible for
informing all "parties," not all "consumers with a claim." Principal Slip Op. 7.

The problem is 91 of the 100 Plaintiffs, including all ten Plaintiffs here, were not "either
party" to the arbitration demand or the AAA Letter. The majority opinion concedes as much.
Companion Slip Op. 6 ("Here, there is no record these Plaintiffs filed any demand with the AAA
before the AAA Letter was issued."). AAA Consumer Rule R-1(d) therefore does not allow any
of the ten Plaintiffs here to file their claims in the circuit court.

Rather than offering a contrary interpretation of AAA Consumer Rule R-1(d), the
majority's response is that requiring these 91 Plaintiffs to be parties to an arbitration as required
by the rule "would force each plaintiff into an exercise in futility by filing and paying for
individual arbitration . . .." Principal Slip Op. 26; Companion Slip Op. 7. This, despite that the
majority cannot say what the result of that demand would be today, Principal Slip Op. 22-23, 26
n.22; Companion Slip Op. 8 n.6, and the AAA Letter makes clear "we will refund any payment
received by the filing party." Futile or not, I would call it complying with the plain language of
the AAA Letter and AAA Consumer Rule R-1(d).

Finally, even assuming the majority's interpretation of the text of the AAA Letter were
reasonable, I do not see how the AAA Letter addressed to only the nine Plaintiffs who demanded
arbitration from AAA, none of whom are Plaintiffs here, could be legally binding as to the other

6

91 Plaintiffs who were not parties to the arbitration demand, based on the terms of the arbitration agreement and as a matter of law. *See generally* 9 U.S.C. §4 ("The court shall hear the *parties*, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the *parties* to proceed to arbitration in accordance with the terms of the agreement." (emphasis added)); *see also* RSMo § 435.012.1 ("In order to insure that all *parties* to an arbitration proceeding are aware of their rights under [the Uniform Arbitration Act], the notification served upon the *parties* by the arbitrator . . . shall contain . . . a statement advising the *parties* of their rights under [the Uniform Arbitration Act] . . . ." (emphasis added)).

I respectfully dissent. I would reverse the circuit court's judgment authorizing all 100 Plaintiffs, including the ten Plaintiffs in this appeal who were not parties to the demand for arbitration from AAA or the declination of the arbitration in the AAA Letter, to file their claims in the circuit court.[4]

_____
Cristian M. Stevens, Judge

_____

[4] The majority opinion suggests my position is that all Plaintiffs are prohibited from filing their claims in the circuit court. Companion Slip Op. 8 n.7. That is not my position. It is the majority opinion that would "affirm the circuit court's judgment overruling TitleMax's motion to compel arbitration regarding *all* Plaintiffs," Companion Slip Op. 6, while conceding not all Plaintiffs are entitled to file their claims in the circuit court, Companion Slip Op. 8 n.7. My position simply is the AAA Letter, the only theory identified by the majority opinion, is not a reasonable theory to affirm the judgment authorizing all 100 Plaintiffs to file their claims in the circuit court.